UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

ANTONIO P.[1],                           )
                                          )
      Plaintiff,                    )
                                          )
     v.                                )     CIVIL NO.  2:19cv375
                                          )
ANDREW SAUL,                              )
Commissioner of Social Security,          )
                                          )
      Defendant.                    )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Supplemental

Security Income (SSI), as provided for in the Social Security Act. 42 U.S.C. § 423(a), §

1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant has not engaged in substantial gainful activity since February 11,

2016, the application date (20 CFR 416.971 *et seq*.).

2.  The claimant has the following severe impairments: major depressive disorder;
    hypertension; major neurocognitive disorder; bipolar II disorder; posttraumatic
    stress disorder (PTSD); stimulant use and cannabis use disorder; obesity; and
    seizure disorder (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that
    meets or medically equals the severity of one of the listed impairments in 20 CFR
    Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the
    claimant has the residual functional capacity to perform a full range of work at all
    exertional levels but with the following nonexertional limitations: The claimant
    should not use ladders, ropes, or scaffolds.  He should not be exposed to moving
    mechanical parts or unprotected heights.  The claimant is limited to simple,
    routine, and repetitive tasks that can be performed free of a production rate pace
    and free of quotas but can rely on end of day goals being satisfied.  The claimant
    is limited to no more than occasional simple workplace changes.  The claimant
    can have no interaction with the public but he can handle up to occasional
    interaction with coworkers and supervisors.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on June 28, 1976 and was 39 years old, which is defined as
    a younger individual age 18-49, on the date the application was filed (20 CFR
    416.963).

7.  The claimant has a limited education and is able to communicate in English (20
    CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past
    relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual
    functional capacity, there are jobs that exist in significant numbers in the national
    economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act,
    since February 11, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr.  17 - 29).

3

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff filed his opening brief on February 5, 2020.  On March 17, 2020, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on April 2, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff has alleged disability for a traumatic brain injury he sustained at five years old and the suspected resulting mental disorders. (AR 120.) Plaintiff's limitations began at five years old when he accidentally shot himself in the head playing with a gun and subsequently dropping

4

it. (AR 389.) He was in a coma for nine months. *Id*. A 2016 CT scan of his head revealed he had

destroyed most of his left frontal lobe. (AR 763.) He has had a history of head injuries from

boxing, playing football, and "gangbanging."(AR 389.) He has received over 45 blows to the

head and lost consciousness from those blows on several occasions. *Id*. His traumatic brain injury

caused instability in his emotions which would cause him to get into altercations with both

coworkers, supervisors, and relatives in the past. (AR 52-54.) At one point an altercation with his

brother ended up with Plaintiff being incarcerated. (AR 400.)

After being released from jail in May 2015 he was homeless. (AR 584-85.) He was

admitted to the emergency department at Frontier Behavioral Health on January 17, 2016 for

suicidal ideations with plans to jump off a bridge. *Id*. There he underwent care primarily under

John Pappenheim, M.D. and support staff. (AR 420, 427, 571, 579, 584-86.) Dr. Pappenheim and

support staff observed depression, suicidal thoughts, and a flat affect. (AR 584.) Plaintiff

reported having auditory hallucinations telling him to kill himself as well as visual hallucinations

of little people. (AR 583.) He was also observed to be anxious (AR 576, 579), paranoid and

delusional. (AR 575.) He continued to hear voices even after being put on medication (AR 398,

572, 580) and at one point they were worsening. (AR 404.) Dr. Pappenheim diagnosed

schizoaffective disorder (AR 413, 416, 419, 423, 426, 573, 581) and recurrent moderate major

depressive disorder with psychotic features. (AR 399.)

After being discharged from the hospital on March 21, 2016 he went in for a mental status

exam by referral of the Indiana Department of Disability Services on May 16, 2016. (AR 752.)

There Caryn Brown, Psy.D., H.S.P.P. assessed his mental state. *Id*. Plaintiff reported being

unable to work because of migraines, inability to handle stress, and paranoia that people were out

to get him. *Id*. At home he did nothing but microwave meals and needed reminders to take his

medication and shower. *Id*. He had trouble concentrating for more than 15 to 20 minutes and

because he was easily sidetracked he did not finish what he started. *Id*. He was socially isolated

due to his conditions. *Id*. Dr. Brown diagnosed unspecified depression disorder. (AR 754.)

Starting on March 9, 2016 Plaintiff began treatment with Augustine I. Izah, M.D. (AR

871.) Dr. Izah treated Plaintiff for a year through May 3, 2017. (AR 871, 874, 877, 880, 883,

886, 889.) Plaintiff came in primarily for treatment of his depression. (AR 874, 880.) Dr. Izah

diagnosed major depressive disorder and urged him to see a psychiatrist for proper care. (AR 872,

875, 878, 880-81.) Plaintiff also reported that he had a seizure while playing a video game and

Dr. Izah diagnosed him with seizures. (AR 880-81, 887.)

Starting on November 2, 2016 Plaintiff began treatment at Edgewater Behavioral Health

Services under the care of his treating physician, Matthew Castelino, M.D. (AR 806.) Dr.

Castelino would treat him for a year through November 16, 2017. (AR 806, 812, 821, 823, 828,

832, 839, 843, 845, 847, 856, 858.) There Plaintiff continued to report audio and visual

hallucinations (AR 815) depression (AR 812, 815, 821, 858), poor concentration (AR 812, 821),

low energy (AR 812, 821), and trouble sleeping. (AR 812, 821, 823.) On mental status exams Dr.

Castelino noted he had a guarded social attitude, paranoia, and was having auditory

hallucinations. (AR 823.) He also had poor concentration, anxiety, and restricted mood. (AR 828,

865.) He diagnosed recurrent moderate major depressive disorder, schizoaffective disorder, and

bipolar disorder. (AR 810, 813, 822, 829. 832, 843, 845, 858.)

In his decision, the ALJ found that Plaintiff had severe impairments of major depressive

disorder, hypertension, major neurocognitive disorder, bipolar II disorder, posttraumatic stress

6

disorder ("PTSD"), stimulant and cannabis use disorder, obesity, and seizure disorder. (AR 17.) The ALJ found he had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels with some nonexertional limitations. (AR 20.) Plaintiff could not use ladders, ropes, or scaffolds; not be exposed to moving mechanical parts or unprotected heights; was limited to simple, routine, and repetitive tasks without production rate paces or quotas; was limited to no more than occasional simple workplace changes; could not interact with the public; and could occasionally interact with coworkers and supervisors. *Id*. The ALJ found based on his RFC he could work as a housekeeper and assembler, and thus was not disabled. (AR 29.)

In support of remand, Plaintiff first argues that the ALJ did not properly evaluate treating source opinions.  The ALJ gave the opinion of Plaintiff's treating therapist, Mr. David Lloyd, Q.B.H.P., little weight because his opinion was not consistent with the record evidence. (AR 26.) Plaintiff contends that the ALJ erred by not analyzing Mr. Lloyd's opinion under 20 C.F.R. 416.927(c) factors. *Id*.; *Gerstner v. Berryhill*, 871 F.3d 257, 263 (7th Cir. 2018); *Phillips v. Astrue*, 413 Fed.Appx. 878, 884 (7th Cir. 2010) (non-medical source opinions should not be discredited outright and instead weighed according to 20 C.F.R. Sec. 404.1527(c)); *Pontarell v. Colvin*, 2014 WL 3056616 at *6 (N.D. Ill. Jul 7. 2014) (depending on Sec. 404.1527 factors there may be situations where a non-acceptable medical source is accorded greater weight than even a treating physician). The Plaintiff claims that the ALJ did not explain what weight was given to Mr. Lloyd's treating relationship with Plaintiff or whether it was considered at all. (AR 26.) According to 20 CFR 416.927(c)(1-2) an opinion is afforded greater weight if the writer has examined the patient and has done so for a long time and frequently. The ALJ acknowledged that Mr. Lloyd was a treating source and examined Plaintiff for some time but failed to explain what

7

weight was given to that treating relationship. (AR 26.); Sec. 416.927(c)(1-2). *Gerstner*, 817 F.3d at 263; *Phillips*, 413 Fed.Appx. at 884. The ALJ stated that Mr. Lloyd only had one examination of Plaintiff on record, but whether this is the reason why Mr. Lloyd was given less weight is unclear because the ALJ gave great weight to consultative examiner Dr. Fife, who only examined Plaintiff once. (AR 26- 27.) The ALJ should have explained why, despite his examining and treating relationship, Mr. Lloyd's opinion was given less weight. 20 CFR 416.927(c)(1-2); *see Spicher v. Berryhill*, 989 F.3d 754, 757 (7th Cir. 2018) (ALJ must build an accurate and logical bridge from the evidence to the conclusion).

The ALJ did not explain what weight was afforded to Mr. Lloyd's specialization or whether it was considered at all. (AR 26.) According to 416.927(c)(5), an opinion is afforded greater weight if the writer specializes in the patient's illness. Mr. Lloyd was a Qualified Behavioral Health Provider and his opinions concerned Plaintiff's concentration, social behavior, and comprehension. (AR 26.) The ALJ should have afforded Mr. Lloyd's opinion on these issues greater weight or explained what consideration was given to his specialization in behavioral health. (AR 26); 20 CFR 416.927(c)(5); *Gerstner*, 817 F.3d at 263.

The ALJ also failed to account for evidence favorable to Plaintiff before concluding Mr. Lloyd's opinion was inconsistent and therefore entitled to little weight. (AR 26.) For example, Mr. Lloyd opined Plaintiff's concentration was limited (AR 26, 899.) The ALJ acknowledged that Plaintiff was observed to be guarded, anxious, preoccupied, and inattentive. (AR 27.) Furthermore, State agency doctors Kari Kennedy, Psy.D. and William A. Shipley, Ph.D. opined Plaintiff had moderate difficulties in maintaining social functioning and concentration which were reasonably caused by his severe organic mental disorders and affective disorders. (AR

8

125,127, 140-41.) Plaintiff reported difficulty concentrating more than 15 to 20 minutes. (AR 330, 753, 812, 821.) His treating physician Matthew Castelino, M.D. noted on mental status exams he had poor concentration and attention (AR 828, 847, 864.) However, the ALJ erred by not considering this evidence when analyzing Mr. Lloyd's opinion especially when those observations supported Mr. Lloyd's opined concentration limitation. (AR 26, 899)*; Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (ALJ cannot fail to address favorable evidence); Spicher, 989 F.3d at 757.

The ALJ also discounted Mr. Lloyd's opinion that Plaintiff would be absent for more than four days a month. (AR 26.) Again, the ALJ failed to address favorable evidence supporting this opinion. *Id*. For example, treating physician Dr. Castelino also opined Plaintiff would be absent more than four days a month. (AR 907.) He has a history of violent tendencies that in one case left him incarcerated. (AR 400). He reports he has a split personality "Tony" that will tell him to do "bad things," he worries about getting into altercations with others, and becomes frustrated about his inability to control his anger. (AR 52-53, 55, 389-91.) His tendency to get into altercations could impact his attendance at work, and the ALJ should have addressed this evidence as well as the opinion of Dr. Castelino when analyzing Mr. Lloyd's absence limitation. *Plessinger*, 900 F.3d at 915; *Spicher*, 989 F.3d at 915.

The ALJ also discounted Mr. Lloyd's opinion that Plaintiff was unable to meet competitive standards of appropriate social behavior including interacting with the public and adhering to basic standards of neatness and cleanliness, and therefore unable to maintain employment. (AR 26.) Again the ALJ failed to address favorable evidence of Plaintiff's history of verbal altercations with supervisors and physical altercations with family members.

(AR 26, 52-53.) The ALJ did not address his testimony that he feared getting into altercations with coworkers and his paranoia around others that could cause him to "freak out." (AR 26, 55-56, 58-59.) The ALJ did not address the opinion of State agency doctor Dr. Shipley, who opined Plaintiff had moderate difficulties in maintaining social functioning, which is a symptom reasonably caused by his severe organic mental disorders and affective disorders. (AR 26, 140-41.) The ALJ failed to address Dr. Castelino's notes, which showed that Plaintiff presented with dependent behavior, guarded social attitude, paranoia, and contained reports that Plaintiff had trouble socializing with others because he believed they did not listen to him. (AR 821, 823, 847, 865.) The ALJ failed to address the opinion of consultative examiner Dr. Slatick, in this context. (AR 26.) Dr. Slatick diagnosed antisocial personality disorder and opined that given Plaintiff's limited ability to exhibit socially appropriate behavior it was unlikely he would be successful in employment. (AR 395-96.) Likewise, the ALJ should have addressed this favorable evidence that supported Mr. Lloyd's opinion on Plaintiff's social abilities but erred by not doing so. (AR 26); *Plessinger*, 900 F.3d at 915; *Spicher*, 989 F.3d at 915.

The ALJ only cited to the opinion of consultative neuropsychological examiner Dr. Slatick as evidence to discount Mr. Lloyd's opinion Plaintiff was unable to comprehend simple tasks (AR 26, 338.) However, the ALJ erred by not explaining how Dr. Slatick's examination was inconsistent with Mr. Lloyd's opinion. *Spicher*, 989 F.3d at 915. Furthermore, the ALJ impermissibly failed to address favorable parts of the opinion, as Dr. Slatick diagnosed major neurocognitive disorder, neurological impairment due to traumatic brain injury, and due to his traumatic brain injury it would be unlikely he could succeed in academia, training, or employment. (AR 395-96); *Plessinger*, 900 F.3d at 915. These diagnoses and opinions support

Mr. Lloyd's comprehension limitation and should have been addressed. (AR 395-96); *Plessinger*, 900 F.3d at 915; *Spicher*, 989 F.3d at 915.

The ALJ found the opinion of Daksha Vyas, M.D., Plaintiff's treating neurologist, was inconsistent with the record in part because it was the only instance of disorientation and slurred speech. (AR 25, 768, 775, 782, 790, 798.) The ALJ stated that Dr. Vyas's observation of disorientation and slurred speech was not representative of his functioning. (AR 25.) However, the ALJ erred by not explaining why it was not representative of his functioning when the ALJ gave great weight to consultative examiner Dr. Fife who only examined Plaintiff once. (AR 26-27); *Spicher*, 989 F.3d at 757.

Also, the ALJ did not explain what weight was given to Dr. Vyas's treating relationship with Plaintiff or whether it was considered at all. (AR 25); 20 CFR 416.927(c)(1-2) Dr. Vyas treated Plaintiff five times over a year from November 3, 2016 through September 6, 2017. (AR 768, 775, 782, 790, 798.) The ALJ should have explained how this treating relationship was considered in giving little weight to Dr. Vyas but erred when he did not. 20 CFR 416.927(c)(1-2); *Gerstner*, 817 F.3d at 263. ; *Spicher*, 989 F.3d at 757.

The ALJ did not explain what weight was afforded to Dr. Vyas's specialization or whether it was considered at all. (AR 25); 20 CFR 416.927(c)(5). Dr. Vyas was a neurologist and his opinions concerned mental disorders such as slurred speech and disorientation, and Plaintiff was specifically referred to Dr. Vyas for his mental impairments related to his seizure activity. (AR 768.) The ALJ should have afforded Dr. Vyas's opinion these issues greater weight or explained what consideration was given to his specialization in neurology. (AR 25); Sec. 416.927(c)(5); *Gerstner*, 817 F.3d at 263; *Spicher*, 989 F.3d at 757.

The ALJ afforded the opinion of Dr. Castelino little weight, stating that his opinion was inconsistent with treatment notes of his most recent examination which reflected normal attention, memory, coping ability, decision making ability, judgement, and appropriate thought. (AR 26-27.) The ALJ erred by not explaining why a single instance of normalcy in these categories contradicted all of Dr. Castelino's opinions. (AR 26); *Spicher*, 989 F.3d at 757; *Brown v. Berryhill*, 2018 WL 3768979 at *3 (N.D. Ind. Aug. 9, 2018). Furthermore, the ALJ was not permitted to cherry-pick a single treatment record to refute the treating physician's opinion. *Plessinger*, 900 F.3d at 915. Additionally, Plaintiff was being treated with psychotropic medications and throughout his treatment it would not be uncommon for him to have good and bad days and so a single good day as the ALJ pointed out would not necessarily refute Dr. Castelino's opined limitations. (AR 351, 360); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (a snapshot of any single moment of a claimant's mental illness says little about their overall condition); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The ALJ also afforded Dr. Castelino's opinion little weight, stating that his opinion was largely based on Plaintiff's subjective statements. (AR 27.) The ALJ explained that at least a portion of Dr. Castelino's opinion was based on what Plaintiff reported and therefore not based on "objective clinical findings." *Id*.

Plaintiff contends that the ALJ erred by not identifying what portion of the opinion was based on subjective allegations and the failure to identify makes it impossible to allow for meaningful review of the ALJ's reasoning. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *see also Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (ALJ erred by not citing specific evidence to support his conjecture that an opinion was based on a factor that would undermine an

opinion).

Plaintiff also notes that even if Dr. Castelino's opinion was based on Plaintiff's subjective complaints that is no reason to discount the opinion because psychiatric evaluations are largely based on what a patient tells their psychiatrist, and so it is not sufficient rationale to reject Dr. Castelino's opinion here. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). The ALJ also afforded Dr. Castelino's opinion little weight because his treatment notes reflected Plaintiff improved on medication and his medication was not changed and that lack of change would be unlikely if Plaintiff could not maintain socially acceptable behavior and was experiencing "clinically significant distress." (AR 27.)

The ALJ erred by citing Plaintiff's improvement to discount Dr. Castelino's opinion because a claimant's improvement is only relevant to the extent that it restores their ability to engage in substantial gainful activity. *Id.*; *Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016) (while evidence reflected that claimant's hypersomnia had improved and his mornings were more lucid, no evidence suggested that it improved to a point where claimant could engage in SGA); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) (stability of impairment and improvement of claimant's gait did not establish that claimant improved to perform light work); *Tate v. Long Term Disability Plan for Salaried Employees of Champion*, 545 F.3d 555, 561 (7th Cir. 2008) (getting better does not equal an ability to work).  Here, Dr. Castelino may have noted improvement but did not opine it meant Plaintiff could sustain employment. (AR 823, 828, 847, 864.) The ALJ's supposition that Dr. Castelino would have made changes to Plaintiff's medication if Plaintiff could not maintain socially acceptable behavior and was experiencing "clinically significant distress" is not supported by evidence and based entirely on the ALJ's

13

impermissible unqualified medical interpretation. (AR 27); *Murphy*, 759 F.3d at 816. The ALJ

had no medical training or education to presume what Dr. Castelino would have or should have

done with his patient. *See Murphy*, 759 F.3d at 816.

 In response to Plaintiff's arguments that the ALJ did not properly evaluate treating source

opinions, the Commissioner argues that the ALJ properly afforded the opinions of Mr. Lloyd and

Dr. Castelino little weight because the ALJ highlighted parts of the record that were inconsistent

with their opinions.  The Commissioner argues the ALJ properly found that recent treatment notes

by both doctors reflect normalcy in many functional categories and so the ALJ was right to give

those opinions little weight.

 Mr. Lloyd and Dr. Castelino opined that Plaintiff generally had an inability or limited

ability to perform work-related activities on a day-to-day basis. (AR 899, 905.) Although Plaintiff

had good days or moments of normalcy as the Commissioner cited, Plaintiff still had bad days in

his mental functioning. (AR 351, 360); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (a

snapshot of any single moment of a claimant's mental illness says little about their overall

condition); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (Court found that a medicated

claimant was "likely to have better days and worse days" but those better days did not equate to

an ability to work full time). The moments of normalcy Plaintiff was able to enjoy did not

necessarily mean that he no longer had the limitations his treating care providers opined he had.

(AR 899, 905); *Punzio*, 630 F.3d at 710; *Bauer*, 532 F.3d at 609. The Commissioner's argument

ignores the obligation that the ALJ has to evaluate Plaintiff's limitations and symptoms in terms

of good and bad days. *Punzio*, 630 F.3d at 710; *Bauer*, 532 F.3d at 609. The ALJ failed to explain

why, despite the other record evidence that Plaintiff had difficult days, single instances of

normalcy discounted the opinions of Mr. Lloyd and Dr. Castelino that Plaintiff had a limited

ability to carry out day-to-day work tasks. (AR 26-27.)

Furthermore, the ALJ erred by failing to explain why evidence of Plaintiff's good days

were more probative than evidence of Plaintiff's bad days. *Plessinger v. Berryhill*, 900 F.3d 909,

915 (7th Cir. 2018) (Court found ALJ erred by failing to explain why he favored one medical

opinion over another); *O'Connor v. Spinner*, 627 F.3d 614, 621 (7th Cir. 2010) (ALJ must

explain why he does not credit favorable evidence or why it is outweighed by unfavorable

evidence). The ALJ did not explain why these findings of normalcy outweighed evidence of

abnormal mental functioning like instances of Plaintiff's violent tendencies that resulted in his

incarceration (AR 26-27, 400) or instances of his inability to control his anger (AR 52-53, 55,

389-91), or instances of paranoia, anxiety, trouble concentrating, and depression that once

resulted in a suicide attempt that left him hospitalized. *Id*.; *see also Reinaas v. Saul*, 2020 WL

1242431 at *4 (7th Cir. Mar. 16, 2020) (ALJ erred weighing medical opinions by citing where

doctors reported the claimant was doing well but ignored notes describing persistent pain and

post-surgical complications).

Other opinions also supported the limitations opined by Mr. Lloyd and Dr. Castelino. Mr.

Lloyd opined Plaintiff was unable to meet competitive standards of appropriate social behavior,

including interacting with the public and adhering to basic standards of neatness and cleanliness.

(AR 26.) Likewise, Dr. Castelino observed Plaintiff had a guarded social attitude and paranoia.

(AR 823.) He opined Plaintiff had very poor social abilities, limited ability to interact with the

public, a seriously limited ability to maintain socially appropriate behavior, and that his paranoia

combined with a general lack of motivation made it difficult for him to work a regular job. (AR

905-07.) The opinion of State agency physician, William A. Shipley, Ph.D., supported the opined limitations of Mr. Lloyd and Dr. Castelino. Dr. Shipley opined Plaintiff had moderate difficulties in maintaining social functioning, and that difficulty was a likely symptom of his organic mental disorders and affective disorders. (AR 26, 140-41.) The opinion of consultative examiner, Emil Slatick, Ph.D., also supported Mr. Lloyd's and Dr. Castelino's opined social limitations. Dr. Slatick diagnosed antisocial personality disorder and opined that Plaintiff's had a limited ability to exhibit socially appropriate behavior and that made it unlikely for him to be successful in employment. (AR 395-96.) The ALJ erred by failing to explain how he considered this supporting evidence under the supportability factor of 20 C.F.R. § 416.927(c) when analyzing Mr. Lloyd's and Dr. Castelino's opined social limitations. *Gerstner v. Berryhill*, 871 F.3d 257, 263 (7th Cir. 2018) (ALJ erred when he did not evaluate the supportability of a treating physician's opinion per the statute).

The Commissioner argues the ALJ properly assigned significant weight to the State agency consultants. The Commissioner fails to explain why it was proper to assign significant weight to a consultant that never examined Plaintiff, while assigning little weight to his treating physician's opinion because he examined Plaintiff twice. (AR 26); *Id*. The ALJ's finding is not supported by substantial evidence because he failed to explain the inconsistent weight applied to medical opinions. *Spicher v. Berryhill*, 989 F.3d 754, 757 (7th Cir. 2018) (ALJ must accurately bridge the evidence to their conclusions).

The Commissioner argues that the ALJ properly relied on the opinion of neurological consultative examiner Caryn Brown, Psy.D to find Mr. Lloyd's opinion inconsistent with the record. However, Dr. Brown only examined Plaintiff once. (AR 752.) The ALJ assigned

16

Plaintiff's treating physician's opinion little weight because he only examined Plaintiff twice. (AR 26.) Clearly, the ALJ's conclusion is not supported by a logical bridge.

Furthermore, Dr. Brown did not state she reviewed Plaintiff's medical record and subsequently based her opinion on Plaintiff's reports and her findings during the consultative examination. (AR 752-55.) On the other hand, the opinions of Mr. Lloyd and Dr. Castelino, to which the ALJ gave little weight, were based on the longitudinal record which included good and bad days in terms of the severity of Plaintiff's symptoms. The ALJ acknowledged that Plaintiff's ability to function may vary from day to day with specific regard to his GAF score. (AR 27.) However, the ALJ relied on a one-time examination that did not account for both the good and bad days the ALJ acknowledged. (AR 27); *Spicher*, 989 F.3d at 757.

Plaintiff notes that the opinion of consultative neurological examiner Emil Slatick, Ph.D., supported Mr. Lloyd's opined limitations. Dr. Slatick opined Plaintiff's social limitations would prevent success in employment. *Id.* This opinion was consistent with Mr. Lloyd's opinion on Plaintiff's limited day-to-day social functioning abilities in a work setting. *Id.* The ALJ had therefore erred by failing to consider this favorable, consistent, and supporting evidence when analyzing the opinion of Mr. Lloyd. *Id.*

The Commissioner argues that the ALJ properly assigned little weight to Dr. Slatick's opinion for being vague and inconsistent with the record. However, even if Dr. Slatick's opinion of "unlikely success" is vague, the opinion was still clearly consistent with the opinions of Mr. Lloyd and Dr. Castelino who opined work preclusive social limitations. (AR 899, 906-07); *Id.* The ALJ should have explained how favorable evidence, like Dr. Slatick's opinion, supported Mr. Lloyd's opinion. 20 C.F.R. § 416.927(c); *Gerstner*, 871 F.3d at 263 (ALJ must consider the

supportability of a treating physician's opinion).

The Commissioner argues that the ALJ accurately faulted Dr. Castelino's opinion for being based on Plaintiff's self-report of symptoms. For support the Commissioner cites *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). However, in *Rice* the Court was concerned with physical impairments. 384 F.3d at 371. Diagnosis of psychological impairments relies on the subjective statements of the patients.  Additionally, Dr. Castelino did not base his opinion solely on Plaintiff's self-report. Dr. Castelino observed throughout their examinations that Plaintiff was socially paranoid, anxious, fatigued, and had trouble concentrating. (AR 823, 828, 847, 864-65.) In his medical source statement Dr. Castelino opined that Plaintiff had symptoms of decreased energy, generalized persistent anxiety, difficulty thinking or concentrating, paranoia, emotional withdrawal, and other symptoms. (AR 904.) Dr. Castelino did not state that these opined symptoms were just a reiteration of what Plaintiff reported. *Id*. Dr. Castelino based his work preclusive opinion on these observed symptoms which affected Plaintiff's ability to carry out day-to-day work tasks. (AR 907.) The ALJ improperly inferred that Dr. Castelino did not observe these symptoms or signs of these symptoms and make the medical diagnosis he was trained to do. (AR 27.) The ALJ therefore erred because he cannot base a conclusion on inference, and doing so requires a remand of the decision. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (an ALJ's decision must be supported by substantial evidence).

The Commissioner argues the "ALJ need not explicitly mention every regulatory factor" so long as he was aware of and considered many of the other factors per the statute.  However, the ALJ could only conclude that the State agency opinions were better supported than Mr. Lloyd's opinion if he had selectively considered the § 416.927(c) factors. If he had considered all of the

factors, as required, then he could have only found that Mr. Lloyd's opinion merited greater

weight. *Gerstner*, 879 F.3d at 263 (ALJ erred when he did not evaluate a treating physician's

opinion per the factors in the statute). Mr. Lloyd was a treating and examining care provider who

specialized, as a Qualified Behavioral Health Provider, in the conditions and symptoms that were

the basis for his opined day-to-day functional limitations. § 416.927(c). Furthermore, Mr. Lloyd

had treated Plaintiff over several months. (AR 897.) Per the 20 C.F.R. § 416.927(c) factors the

ALJ should have therefore afforded Mr. Lloyd's opinion greater weight due to his treating,

examining, and specialist status. The State Agency consultant and record examiners were not

specialists in Plaintiff's conditions and either conducted a single consultative examination or did

not examine him at all. (AR 129, 143, 388, 396, 752-55.) Therefore, they must not have been

"aware" of the other factors as they applied to each opinion, and as such the Commissioner's

supporting cases do not apply to the present decision.  *See* § 416.927(c); *Schreiber v. Colvin*, 519

F.App'x 951, 959 (7th Cir. 2013); *Green v. Berryhill*, 2019 WL 1375781 at *3 (N.D. Ind. Mar.

27, 2019); *Shingler v. Berryhill¸* 2018 WL 3301840 at *3 (N.D. Ind. Jul. 5, 2018). Furthermore,

the ALJ is required to explain how the entire § 416.927(c) factor checklists applies to a medical

opinion. *Bauer*, 532 F.3d at 609. The ALJ was not permitted to selectively cite § 416.927(c)

factors to discount Mr. Lloyd's opinion and to support State agency consultant opinions.

*Plessinger*, 900 F.3d at 915. The Commissioner notes that the ALJ acknowledged Mr. Lloyd's

treating source status, but his opinions were "not consistent with or supported by the objective

evidence in the file. . ." .  However, the ALJ erred because he did not explain how, despite his

treating source status, Mr. Lloyd's opinion was not consistent with or supported by the record.

*Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJ must provide sufficient detail in

analysis that allows a court to trace the path of their reasoning). By merely stating Mr. Lloyd was

a treating physician and then stating his conclusion about his opinion, the ALJ deprived the Court

of any rationale to meaningfully review. (AR 26); *Scott*, 297 F.3d at 595.

  As noted, the ALJ discounted Mr. Lloyd's opinion on Plaintiff's limited comprehension of

simple tasks by citing to Dr. Slatick's opinion. However, the ALJ had erred because he did not

explain how Dr. Slatick's opinion was inconsistent with the comprehension limitation Mr. Lloyd

found. The ALJ had also ignored parts of Dr. Slatick's opinion that were consistent with Mr.

Lloyd's opined limitations.  The ALJ had therefore erred by failing to address the entirety of Dr.

Slatick's opinion.  The ALJ then additionally erred by failing to explain why he found Mr.

Lloyd's opinion to be inconsistent with the record and Dr. Slatick's opinion despite findings

within Dr. Slatick's opinion that supported Mr. Lloyd's opinion.

  The Commissioner argues that the ALJ properly considered evidence beyond Dr. Slatick's

opinion to discount Mr. Lloyd's opinion. The Commissioner states that Plaintiff "reiterates the

same treatment notes that the ALJ considered" as well as State agency findings of moderate

limitations in social functioning and concentration.

  The Commissioner, however, fails to address that the ALJ only stated that Dr. Slatick's

opinion was inconsistent with Mr. Lloyd's opined limitation. The error is that the ALJ failed to

explain why and what specific parts of Dr. Slatick's limitation was inconsistent with Mr. Lloyd's

opinion. (AR 26); *Spicher*, 989 F.3d at 915. The Commissioner states that the ALJ considered

other evidence in reviewing Mr. Lloyd's opinion.  However, the extent of the ALJ's consideration

was a short sentence that listed Dr. Slatick's consultative exam, Plaintiff's mental status upon his

discharge from the hospital for a suicide attempt in February of 2016, and his mental status during

20

a check up on November 2017. (AR 26.) This broad citation to parts of the record does not

explain why the ALJ found Mr. Lloyd's opinion to be inconsistent with the record.  Furthermore,

it fails to address the favorable evidence that supported Mr. Lloyd's opinion.  The ALJ needed to

explain how Mr. Lloyd's opined limitation was inconsistent with evidence he cited especially

when parts of that evidence supported Mr. Lloyd's limitation. *Plessinger*, 900 F.3d at 915;

Spicher, 989 F.3d at 915.

As noted, the ALJ erred in affording Dr. Castelino's opinion little weight for being

inconsistent with normalcy findings in recent examinations. The ALJ was not permitted to cite a

single instance of normalcy to discount all of Plaintiff's limitations without explaining why that

treatment record discounted those limitations.

The Commissioner argues that Plaintiff has improperly asked the Court to reweigh the

medical evidence and that the ALJ properly explained his conclusions were based on the medical

record and opinion evidence.  However, Plaintiff did not ask the Court to reweigh evidence but

rather argued the ALJ needed to have created a logical bridge supported by detailed analysis that

connected his cited evidence to the conclusion he made. An ALJ must develop a logical bridge

from the evidence to his conclusion with enough specificity to allow for meaningful review of his

rationale. *Scott*, 297 F.3d at 595. In the present case the ALJ cited Dr. Castelino's most recent

examination which reflected normalcy across a few categories of Plaintiff's functional ability.

(AR 27.)

The ALJ should have explained why this most recent examination meant that Plaintiff

would not have any functional limitations in the future, but did not. *Punzio*, 630 F.3d at 710 (a

snapshot of any single moment of claimant's mental illness says little about their overall

21

condition). Plaintiff properly pointed that out that he was being treated with psychotropic medications and that it was common for someone undergoing such treatment to have good days, like in his most recent exam with Dr. Castelino, and bad days otherwise. *Bauer*, 532 F.3d at 609 (Court found that a medicated claimant was "likely to have better days and worse days" but those better days did not equate to an ability to work full time). In his most recent exam of Plaintiff, Dr. Castelino did not opine that Plaintiff would no longer have bad days going forward. (AR 864-66.) To make that conclusion, the ALJ would have had to impermissibly interpret the medical evidence despite not having the experience or requisite training to do so. *See Lambert v. Berryhill*, 896 F.3d 768, 744 (7th Cir. 2018) (ALJ cannot interpret objective medical evidence). Plaintiff did not improperly ask the Court to reweigh the medical evidence but rather held the ALJ to his obligation to explain how the record evidence led to his conclusion, which the ALJ failed to do.

The Commissioner argues that the ALJ properly discounted Dr. Vyas' opinion by stating "the longitudinal evidence [did] not suggest that [Plaintiff's] presentation [in November 2016 was] representative of his functioning for a continuous period of at least 12 months." This is a conclusion, not an explanation. The ALJ failed to cite what evidence he considered in making the above conclusion. (AR 25.) The ALJ therefore failed to draw a logical bridge from the evidence mentioned and the conclusion he made and deprived the Court of any rationale to meaningfully review. *Spicher*, 989 F.3d at 915; *Scott*, 297 F.3d at 595.

The Commissioner also argues that the ALJ properly considered both Dr. Vyas's treating relationship with Plaintiff and his specialization when weighing his opinion. In part, the Commissioner argues that Dr. Vyas never provided a medical opinion, as defined by 20 C.F.R. §

22

416.927(a)(1), on Plaintiff's functional limitations as related to his impairments.  The
Commissioner cites that medical opinions reflect judgements on the nature and severity of a
claimant's impairments. However, Dr. Vyas did provide medical opinions by way of diagnosing
Plaintiff with cognitive dysfunction and recurrent seizure disorder of the grand mal type. (AR
780.) These diagnoses were based on Dr. Vyas's professional medical interpretations of the
available observations, reports, and objective medical evidence on Plaintiff. The ALJ needed to
weigh that medical opinion according to the 20 C.F.R. 416.927(c) factors. *Gerstner*, 871 F.3d at
263. Additionally, the ALJ needed to consider that diagnosis in conjunction with the observations
Dr. Vyas made of both good and bad days Plaintiff had. *Goins v. Colvin¸*764 F.3d 677, 681-82
(7th Cir. 2014) ("[ALJs] have to consider an applicant's medical problems in combination.") As
explained above, Plaintiff was likely to have good and bad mental health days because he was
treated with medication in an ongoing fashion. *Bauer*, 532 F.3d at 609. Contrary to the
Commissioner's argument the ALJ did not "discuss" Dr. Vyas opinion but rather again, in error,
stated conclusions without explanation and denied the Court any rationale to meaningfully
review. (AR 25); *Spicher*, 989 F.3d at 915; *Scott*, 297 F.3d at 595. Furthermore, the ALJ
incorrectly assumed that a single instance of normalcy meant that Plaintiff would no longer have
limitations going forward, even though Dr. Vyas did not make that conclusion at the exam that
showed normalcy in Plaintiff's functioning. *Lambert*, 896 F.3d at 744; *Larson*, 26 F.Supp.3d at
811.

       For all the above reasons, remand is required on the issue of the proper weight to be given
to the treating source opinions.

       Next, Plaintiff argues that the ALJ incorrectly assessed the RFC.  The ALJ found Plaintiff

could not tolerate interaction with the public but could handle occasional interaction with

coworkers and supervisors. (AR 20.) Plaintiff contends that the ALJ erred by not citing

supporting evidence for this conclusion or explaining how he arrived at it. (AR 20-28); SSR 96-

8p; *Briscoe ex rel. Taylor v. Barnhart*, 725 F.3d 345, 351 (7th Cir. 2005); *Young v. Colvin*, 2016

WL 4536525 at *4 (N.D. Ind. Aug. 31, 2016) ("The RFC should be based on evidence in the

record.") (citing *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008)). The ALJ should have

explained his determination especially because he gave great weight to State agency consultants

Dr. Kennedy and Dr. Shipley who opined Plaintiff could briefly interact with supervisors and

coworkers. (AR 25-26); SSR 96-8p; *Briscoe ex rel. Taylor*, 725 F.3d at 351. Additionally, the

ALJ erred by not explaining how a State agency opinion that Plaintiff could tolerate brief

interaction with supervisors and coworkers translated into an ability to interact with them

occasionally, which means up to one-third of the workday. SSR 83-10. The ALJ impermissibly

failed to address this evidence with respect to his limitation and specifically explain how someone

with a history of altercations with coworkers and supervisors could have tolerated interacting with

them for a third of the day. (AR 20-28); SSR 96-8p; *Briscoe ex rel. Taylor*, 725 F.3d at 351. The

ALJ also did not explain how a on- time examination by a State agency doctor demonstrated any

ability for Plaintiff to interact with supervisors and coworkers when he had faulted other opinions

of record for only examining Plaintiff once. (AR 26-27); SSR 96-9p; *Spicher*, 989 F.3d at 757;

*Briscoe ex rel. Taylor*, 725 F.3d at 351.

The ALJ also found Plaintiff had a moderate restriction in ability of adapting and

managing himself. (AR 19). The ALJ had given little weight to all medical opinions of record

except those of the State agency consultative record examiners who did not find the same

moderate restriction. (AR 21-28, 127-29, 141-42). The ALJ erred by not providing evidentiary support for this RFC limit and for not explaining how the record supported such a limit especially when the opinion he credited with weight did not opine the same limitation. (AR 25-26, 127-29, 141-42); SSR 96-8p; *Spicher*, 989 F.3d at 757; *Briscoe ex rel. Taylor*, 725 F.3d at 351; *Young*, 2016 WL 4536525 at *4 (citing *Craft*, 539 F.3d at 676). Adapting or managing oneself is defined as the ability to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(E)(4). Plaintiff demonstrated his inability to do these things through his history of violence that resulted in him being incarcerated. (AR 400). He reported having a split personality "Tony" that would tell him to do "bad things," he worried about getting into altercations with others, and became frustrated over his inability to control his anger. (AR 52-53, 55, 389-91.) The ALJ should have confronted this evidence when determining the degree of Plaintiff's ability to adapt and manage himself, and explained how he only had a moderate limitation despite evidence of altercations that once incarcerated him. (AR 19); SSR 96-8p; *Briscoe ex rel. Taylor*, 725 F.3d at 351; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

In response, the Commissioner argues in part that the ALJ properly considered State agency findings and the medical record to determine Plaintiff's social ability. Specifically, the ALJ noted that Plaintiff was guarded around treatment providers and had trouble with supervisors in the past. The Commissioner concludes that the medical record provided more than a mere scintilla of evidence to support the ALJ's determined social ability.

However, the State agency findings which the ALJ relied on stated that Plaintiff could only briefly interact with supervisors and coworkers. (AR 25-26.) The ALJ determined that

Plaintiff could interact with supervisors and coworkers occasionally which would amount to a third of the workday. (AR 20); SSR 83-10. The issue was that the ALJ did not explain how he arrived at an occasional determination when the opinions he relied on opined Plaintiff could only tolerate brief interactions.  This demonstrates a break in the requisite logical bridge from the ALJ's cited evidence and his conclusion. Spicher, 989 F.3d at 915. Brief and occasional are not synonymous as "brief" address the length of an interaction and "occasional" addresses frequency. *Schickel v. Colvin*, 2015 WL 8481964 at *10 (N.D. Ill. Dec. 10, 2015). The error was not harmless because the vocational expert testified that interaction between an employee and employer during a training period can be frequent which suggests more than brief interaction. (AR 69.) The ALJ gave great weight to State agency opinion that determined Plaintiff could only tolerate brief interactions with supervisors and coworkers. (AR 25-26.) This evidence suggests that Plaintiff would be precluded from competitive work because he was intolerant of the greater than brief interactions required of him during any work training period. (AR 69, 25-26.) The ALJ further erred by failing to orient the vocational expert to the totality of Plaintiff's limitations and that error was harmful because the limitation would have likely found him disabled. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)*; see also Potrebic v. Berryhill*, 2019 WL 1397477 at *2 (N.D. Mar. 27, 2019) (training periods require more than superficial interaction).

As discussed above, Plaintiff argues that the ALJ did not provide evidentiary support for his determination that Plaintiff had a moderate restriction in adapting and managing himself.  The ALJ had only given significant weight to the opinions of State agency consultative record examiners who did not opine such a restriction.  The ALJ therefore erred by not providing evidentiary support for his conclusion and not explaining how he arrived at that conclusion.

The Commissioner argues that Plaintiff incorrectly attempted to establish a mental impairment greater than a moderate limitation in adapting and managing himself because he only cited to subjective statements for support. Plaintiff needed to have cited to objective medical evidence from an medical source to establish an impairment.

However, regardless of that fact the ALJ only gave significant weight to the opinions of the State agency consultative record examiners and no one else. (AR 21-28.) Those State agency examiners did not find the moderate restriction that the ALJ found. (AR 19, 127-29, 141-42.) Therefore, this demonstrates a break in the requisite logical bridge between the evidence the ALJ relied upon and his conclusion. *Spicher*¸ 989 F.3d at 915. The State agency doctors made their opinions before the effective date of the new special technique criteria. The State agency record examiners issued their opinion initially on May of 2016 and upon reconsideration on August of 2016. (AR 126, 129, 131, 140, 143, 145.) The new special technique criteria that included a measure of a claimant's ability to "adapt or manage oneself" became effective March of 2017 and so the State agency examiner opinion that the ALJ relied upon did not include an opinion on that criterion. 20 C.F.R. 416.920a(c)(4). The ALJ therefore incorrectly determined this criterion himself without the requisite training or experience. *Lambert*, 896 F.3d at 744; *Larson*, 26 F.Supp.3d at 811.

The evidence supported a determination of a greater than moderate limitation in adapting and managing himself. For example, Dr. Castelino opined that Plaintiff had anger problems and paranoia. (AR 903.) Dr. Castelino added that Plaintiff had generalized persistent anxiety, mood disturbances, difficulty thinking and concentrating, and that he was emotionally withdrawn and isolative. (AR 904.) Dr. Castelino also opined Plaintiff had a seriously limited ability to

remember work procedures and to make simple work-related decisions. (AR 905.) Generally, he opined Plaintiff had a seriously limited ability to maintain socially appropriate behavior and a limited ability to interact with the public and adhere to basic standards of neatness and cleanliness. (AR 906.) Mr. Lloyd opined Plaintiff had trouble working because of his anger and anxiety, and problems concentrating, maintaining socially appropriate behavior, and handling stress. (AR 899-906.) The ALJ was not qualified to assess the above evidence in the domain of Plaintiff's ability to adapt and manage himself without expert input. (AR 19); *Lambert*, 896 F.3d at 744.

Due to these errors regarding Plaintiff's RFC, remand is warranted on this issue also.

Next, Plaintiff argues that the ALJ incorrectly assessed Plaintiff's subjective allegations. Plaintiff claims that the ALJ rejected his subjective allegations of paranoia, poor focus, and poor memory, stating they were not supported by the most recent mental status examination showing he had normal attention, memory, social judgement, and appropriate mood and affect with anxious facial expression and preoccupied concentration. (AR 28.) However, the ALJ erred by discounting Plaintiff's subjective allegations by selectively citing a single examination to support his conclusion. *Plessinger*, 900 F.3d at 915. Furthermore, as explained above, Plaintiff was being treated with psychotropic medications and throughout his treatment it would not be uncommon for him to have good and bad days, so a single good day as the ALJ pointed out would not necessarily refute his allegations. (AR 351, 360); *Punzio*, 630 F.3d at 710; *Bauer*, 532 F.3d at 609. Additionally, other evidence supported Plaintiff's allegations and the ALJ should have addressed them. *Plessinger*, 900 F.3d at 915. For example, Plaintiff alleged poor memory, and while on medication he still needed reminders to take his medication all of the

time. (AR 315, 327, 752.) The ALJ should have explained how a single examination with minimal abnormalities undermined Plaintiff's allegations of paranoia, poor focus, and poor memory when he exhibited symptoms despite being on medication. (AR 28, 315, 327, 752); *Spicher*, 989 F.3d at 757.

The ALJ found Plaintiff's ability to play video games and sports suggested he could perform simple, routine tasks and interact with others occasionally. (AR 28.) The ALJ erred by not explaining how his ability to play video games and sports "seem to suggest" he had the capacity to do such tasks. *Id*.; *Spicher*, 989 F.3d at 757; *Voigt v. Colvin*, 781 F.3d 871, 878-79 (7th Cir. 2015) (ALJ erred by failing to explain how playing video games meant the claimant had skills for competitive work). Additionally, the ALJ cites to a single adult function report for the proposition that Plaintiff plays basketball. (AR 28.) However, that function report states in full he "play[s] basketball - other types of sports - play station" and other parts of the record reflect he plays a basketball game on his Sony "play station" suggesting that the ALJ may have mischaracterized the evidence and Plaintiff did not in fact play physical sports at all. (AR 28, 61, 84, 287); *Golembiewski*, 322 F.3d at 917 (citing *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Even if Plaintiff played basketball, an ability to play a casual game demonstrates no evidence of an ability to interact with others in a competitive workplace. *Bjornson v. Astrue*, 871 F.3d 640, 647 (7th Cir. 2012). Furthermore, the ALJ did not explain what playing basketball was like for Plaintiff, since given his anti-social tendencies he could have fought with others. (AR 28, 55-56, 58-59, 400.) The ALJ erred for not explaining how Plaintiff's ability to play basketball despite these anti-social tendencies meant that he could interact with others occasionally. (AR 28); *Spicher*, 989 F.3d at 757.

The ALJ also found that while Plaintiff testified to being unable to do any house chores, the statement was inconsistent because the ALJ found Plaintiff to be capable of carrying out simple, routine, and repetitive tasks with no more than occasional changes in the workplace. (AR 28.) The ALJ erred by arguing this backward logic as the ALJ should have first assessed Plaintiff's testimony and then determined what his RFC limits were. *Bjornson*, 871 F.3d at 645. The ALJ was not permitted to assess Plaintiff's RFC limits first and then reject subjective statements that were inconsistent with it. *Id*.

The ALJ also discounted Plaintiff's subjective allegations by stating that his treating physician did not modify his medications or increase them which in the ALJ's opinion was inconsistent with his alleged debilitating paranoia and poor focus ability. (AR 28.) The ALJ's opinion on whether medication should have been increased or modified is irrelevant because he is not a trained medical professional qualified to comment on what Plaintiff's treating physician would have or should have done. *See Murphy*, 759 F.3d at 816. The ALJ also discounted Plaintiff's allegations because he has not required additional inpatient treatment since he resumed medication. (AR 28.) However, the ALJ erred because hospitalization is reserved for those who cannot care for themselves or who appear dangerous to themselves, not people who cannot work competitively. *Voigt*, 781 F.3d at 878. Furthermore, Plaintiff was on several medications including saphris, an anti-psychotic, hydroxyzine hydrochloride for sleep, zoloft for depression, and buspirone for anxiety. (AR 823, 847, 864, 867); *see Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (the fact that doctor's prescribed claimant drugs indicated that claimant's alleged symptoms were real). Plaintiff's doctors must have seen signs of severe symptoms if they were willing to prescribe anti-psychotic, anti-insomnia, antidepressant, and anti-anxiety drugs for his

alleged symptoms. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (improbable that

doctors would prescribe claimant drugs if they thought they were faking symptoms). The ALJ

was in no place to second guess these medical professionals opinions and the ALJ should have

explained how he considered Plaintiff's medication but did not. SSR 16-3p; *Murphy*, 759 F.3d at

816.

      In response, the Commissioner argues that the ALJ properly explained that even if

Plaintiff had to take breaks to maintain his focus due to his limitations, the fact that he played

video games suggested he could perform simple routine tasks. The ability to perform activities of

daily living punctuated by rest does not support a finding that Plaintiff could sustain competitive

work. *Rousey v. Heckler*, 771 F.2d 1065, 1070 (7th Cir. 1985) (a claimant who must rest

frequently between activities, cannot do dishes or cook on her own, or carry groceries or laundry,

cannot perform even sedentary work). The ALJ failed to discuss how many breaks would have

been too many for Plaintiff to sustain competitive work. (AR 28.) The Commissioner also fails to

address that the ALJ may have misinterpreted Plaintiff's statement on playing basketball as

Plaintiff seemed to mean that he was playing a basketball video game.

      The Commissioner argues the ALJ properly considered that Plaintiff's condition had

improved and stabilized with medication and treatment, and that in turn supported the ALJ's RFC

determination. Evidence of improvement does not evidence an ability to work. *Allensworth v.*

*Colvin*, 814 F.3d 831, 834 (7th Cir. 2016). Evidence of stability alone does not suggest that

Plaintiff could engage in substantially gainful activity. *Murphy v. Colvin*, 759 F.3d 811, 818-19

(7th Cir. 2014). Generally, the ALJ could not equate Plaintiff's improvement to an ability to

work. *Tate v. Long Term Disability Plan for Salaried Employees of Champion*, 545 F.3d 555, 561

(7th Cir. 2008). Furthermore, the "baseline level of stability" for Plaintiff who had paranoia and hallucinations, was not baseline normal and could have constituted baseline disability. *See Allensworth*, 814 F.3d at 834; *Murphy*, 759 F.3d at 818-19; Tate, 545 F.3d at 561.

The Commissioner faults Plaintiff for arguing that the ALJ only cited a single examination to discount his alleged symptoms. The Commissioner argues that the ALJ considered years of medical records which supported his conclusion Plaintiff's alleged nature and severity of his impairments were not supported by the record.

The ALJ stated that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms" were not "fully consistent" with the "medical evidence in the file as discussed above." (AR 27-28.) The ALJ cited a few of Plaintiff's alleged symptoms and limitations. (AR 28.) He concluded that despite these allegations "the most recent mental status examination" showed normalcy in several functional categories and so "the intensity and limiting effects of the claimant's symptoms are not entirely consistent with the objective medical evidence." *Id*. The ALJ failed to explain how the objective medical evidence, besides the one examination he singled out, were not consistent with his alleged symptoms and limitations. *Id*.; *Scott*, 297 F.3d at 595 (ALJ must provide sufficient detail in analysis that allows a court to trace the path of their reasoning). The ALJ was also required to address the favorable evidence pointed out by Plaintiff. *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001) (ALJ must explain why favorable evidence was less probative than unfavorable evidence).

The Commissioner also argues that the ALJ properly found that it would be unlikely that Dr. Castelino would not change medication if Plaintiff had continued functional difficulties. However, this is not a conclusion that Dr. Castelino made in not changing Plaintiff's medication.

32

(AR 823, 828, 847, 864.) The ALJ therefore improperly inferred his conclusion and made an improper medical determination without the requisite training and experience to do so. *Lambert*, 896 F.3d at 744 (ALJ cannot interpret objective medical evidence); *accord Larson*, 26 F.Supp.3d at 811. There could have been many reasons that Dr. Castelino in his expert medical opinion did not change Plaintiff's medication, but that determination was up to him and not the ALJ. *Id.*

Thus, remand is appropriate on the issue of the proper assessment of Plaintiff's subjective allegations.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: April 20, 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court